

FILED by          D.C.
ELECTRONIC

**June 25, 2008**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA
Miami Division

CASE NO.: **08-21813-CIV-JORDAN/MCALILEY**

JANICE LANGBEHN, individually and as
personal representative of the ESTATE OF
LISA MARIE POND, and DANIELLE
LANGBEHN-POND, KATLEYN LANGBEHN-POND,
and DAVID LANGBEHN-POND, by and through
their mother and next friend, JANICE LANGBEHN,

     Plaintiffs,

vs.

THE PUBLIC HEALTH TRUST OF
MIAMI-DADE COUNTY, d/b/a
JACKSON MEMORIAL HOSPITAL,
GARNETT FREDERICK, DR. ALOIS ZAUNER,
and DR. CARLOS ALBERTO CRUZ,

     Defendants.

_____/

## COMPLAINT AND JURY DEMAND

Plaintiffs Janice Langbehn, individually ("Janice"), and as personal representative of the

Estate of Lisa Marie Pond ("Lisa Marie"), and Danielle Langbehn-Pond ("Danielle"), Katelyn

Langbehn-Pond ("Katie"), and David Langbehn-Pond ("David"), by and through their mother

and next friend Janice Langbehn (collectively, "the Langbehn-Pond Family" or the "Plaintiffs"),

sue Defendants The Public Health Trust of Miami-Dade County, d/b/a Jackson Memorial

Hospital ("Jackson Memorial"), Garnett Frederick ("Frederick"), Dr. Alois Zauner ("Zauner"),

and Dr. Carlos Alberto Cruz ("Cruz") (collectively, "Defendants"), and allege as follows:

## SUMMARY OF THE ACTION

1.      This is an action for damages brought by the Langbehn-Pond Family based upon claims for negligent infliction of emotional distress, negligence per se, and/or willful, wanton, and intentional infliction of emotional distress variously against Jackson Memorial, Frederick, Dr. Alois Zauner, and Dr. Carlos Alberto Cruz.

2.      Janice and Lisa Marie were committed life partners and the parents of four jointly adopted children, including Danielle, Katie and David ("the Langbehn-Pond children").

3.      After Lisa Marie arrived by ambulance at Jackson Memorial, Defendants refused to recognize the Langbehn-Pond children as Lisa Marie's family, failed to provide Janice timely information on Lisa Marie's condition, ignored the need of Janice and the Langbehn-Pond children for supportive services, and prevented Janice and the Langbehn-Pond children from being with Lisa Marie for nearly eight hours as Lisa Marie lay dying alone.  There was no medical justification or necessity for the hospital's refusal to allow Janice and the Langbehn-Pond children access to Lisa Marie.

4.      Because of the negligence and/or willful, wanton, and intentional actions and omissions of Defendants, the members of the Langbehn-Pond family suffered physical, emotional, and psychological injury as a result of Janice being denied information about, and Janice and the Langbehn-Pond children being denied visitation with and access to Lisa Marie during her dying hours, despite Janice and Lisa Marie's durable power of attorney ("Power of Attorney") and the familial relationships that existed.

5.      Defendants' cruel and/or substandard treatment was motivated by anti-gay animus, was contrary to professional standards and a breach of Defendants' duty of care, as a consequence of which the Plaintiffs have suffered serious and irreparable injury.

2

## PARTIES, JURISDICTION, AND VENUE

6.      Plaintiff Janice is an individual domiciled and residing in Lacey, Washington and is a citizen of the United States.

7.      Plaintiff Janice is the personal representative of the estate of decedent Lisa Marie, who was until her death an individual domiciled and residing in Lacey, Washington.

8.      Plaintiff Danielle is a minor adoptive child of Janice and Lisa Marie domiciled and residing in Lacey, Washington, and is a citizen of the United States.

9.      Plaintiff Katie is a minor adoptive child of Janice and Lisa Marie domiciled and residing in Lacey, Washington, and is a citizen of the United States.

10.     Plaintiff David is a minor adoptive child of Janice and Lisa Marie domiciled and residing in Lacey, Washington, and is a citizen of the United States.

11.     Defendant Public Health Trust d/b/a Jackson Memorial Hospital is an agency and instrumentality of Miami-Dade County, doing business in Miami-Dade County, with its principal place of business located at 1611 NW 12th Avenue, Miami, Florida.

12.     Defendant Frederick is an individual domiciled and residing in Miami-Dade County and/or Broward County, Florida, is a citizen of the United States, and at all times material was an employee of Jackson Memorial.

13.     Defendant Zauner was an attending physician and among the doctors and professional staff directing and providing care to Lisa Marie at all times material; was partially or wholly responsible for decisions denying access and information to Janice and the Langbehn-Pond children and for the failure to respect the rights imbued in the Power of Attorney documents; is an individual domiciled and residing in Miami-Dade County and/or Broward

Baker & McKenzie LLP, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131 – (305) 789-8900

County, Florida; is a citizen of the United States, and at all times material was an employee and/ or on the professional staff of Jackson Memorial.

14.     Defendant Cruz was an attending physician and among the doctors directing and providing care to Lisa Marie at all times material and was partially or wholly responsible for decisions denying access and information to Janice and the Langbehn-Pond children and for the failure to respect the rights imbued in the Power of Attorney documents; is an individual domiciled and residing in Miami-Dade County and/or Broward County, Florida; is a citizen of the United States; and at all times material was an employee and/or on the professional staff of Jackson Memorial.

15.     This action involves negligence and civil rights claims where the matter in controversy exceeds the sum or value of $75,000, exclusive of costs and interests, and is between citizens of the state of Florida and citizens of the state of Washington, and therefore this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

16.     This Court has *in personam* jurisdiction over Defendants because they are found in this District, operate or carry on a business having a principal place of business in this District, and/or are otherwise subject to jurisdiction pursuant to § 48.193, Fla. Stat. (2007).

17.     Venue is proper in this District under 28 U.S.C. § 1391(a) because all of the Defendants reside in this District and all reside in the state of Florida, and because a substantial part of the events or omissions giving rise to the claim occurred in this District.

18.     Plaintiffs have performed all conditions precedent to this action, including but not limited to the notice requirements of § 768.28, Fla. Stat. (2007).

Baker & McKenzie LLP, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131 – (305) 789-8900

## FACTUAL BACKGROUND

### A.   JACKSON MEMORIAL'S INTERNAL POLICIES

19.   Jackson Memorial's policies and standards are set forth on their publicly accessible website and elsewhere, including but not limited to the following: "Patients' Bill of Rights & Responsibilities," "Social Work & Discharge Planning," and "About Advance Directives" (collectively "Internal Policies").

20.   These Jackson Memorial Internal Policies claim to provide, without limitation:

   a.   the right of patients to an environment that preserves dignity;

   b.   the right to "fair medical care or help;"

   c.   the right to "an environment free from mental . . . sexual and verbal abuse;"

   d.   the right to execute Advance Directives (such as durable powers of attorney and designation of health care surrogates), and to have those honored by Jackson Memorial;

   e.   "patient-centered care that is holistic, compassionate and culturally sensitive;"

   f.   "solutions to the bio-psychosocial" needs of their patients "and families;"

   g.   that "crisis and bereavement counseling are available 24-hours a day to patients, families and friends" in the Ryder Trauma Unit;

   h.   social workers that "provide the emotional support for the anxiety, fear and questions to be answered" for patients' "friends and families;"

   i.   "social workers [that] have been specially trained to work with individuals and families in dealing with personal and interpersonal crises caused by illness and hospitalization;"

   j.   "social workers [that] facilitate family involvement with the entire treatment team" and that "keep the family apprised of the patient's progress" during a patient's hospital stay;

5

k.  "social workers [that] are trained to help patients and families help themselves" and to "assist in acquiring the tools to cope with troubling situations such as … traumatic illness [and] bereavement;"

l.  a "nurse-patient relationship [that] is based on genuine care and respect, recognizing the individual's values, developmental stage, disabilities, sexual orientation, nationality, religious, and cultural beliefs;"

m.  "patient representatives" that "serve as liaisons between families/visitors and hospital staff for the resolution of concerns; assist with needed information, patient health care issues, complaints and compliments;"

n.  a "patient representative" available to serve as a liaison between patients and their family between the hours of 2:00 pm and 10:30 pm;

o.  a commitment to "family-centered care to ensure families, significant others and social supports are partners in the delivery of care;" and

p.  "health care with kindness and with respect for patients' diverse backgrounds and their rights to dignity."

21.  On information and belief and by admission, Jackson Memorial has a "liberal visitation policy" which allows visitors to be brought in "as soon as it's humanly possible and appropriate."

## B.   STANDARDS GOVERNING JACKSON MEMORIAL

22.  Jackson Memorial is an accredited member of the Joint Commission on Accreditation of Healthcare Organizations (the "Joint Commission"), an independent, not-for-profit organization that evaluates and accredits hospitals in the United States. As a result of Jackson Memorial obtaining such accreditation, Jackson Memorial must abide by the Joint Commission's standards.

23.  These standards include but are not limited to the following:

a.  That "family" is defined as "[t]he person(s) who plays a significant role in the [patient's] life. This may include a person(s) not legally related to the individual."

b.    A requirement that an accredited hospital "promote patient and family involvement in all aspects of [a patient's] care."

c.    A requirement that an accredited hospital respect the rights of patients to have their "own cultural, psychosocial, spiritual, and personal values, beliefs, and preferences respected."

d.    A requirement that an accredited hospital support "the right of each patient/resident/client to personal dignity."

e.    A requirement that an accredited hospital address the resolution of complaints from patients' families.

## C.    LAWS GOVERNING DURABLE POWERS OF ATTORNEY

24.    Florida statutes provide strict guidelines that govern health care professionals with respect to Health Care Advance Directives, which includes the Power of Attorney executed by Lisa Marie and naming Janice as her attorney in fact for health care decisions.

25.    The provisions of the Florida statutes governing durable powers of attorney include, but are not limited to the following:

a.    If the principal has designated a health care surrogate or has delegated authority to make health care decisions to an attorney in fact under a durable power of attorney, the facility shall notify such surrogate or attorney in fact in writing that her or his authority under the instrument has commenced.

b.    The surrogate's authority shall commence upon a determination that the principal lacks capacity, and such authority shall remain in effect until a determination that the principal has regained such capacity.

c.    An advance directive executed in another state in compliance with the law of that state or of this state is validly executed for the purposes of the Florida statutes.

## D.    THE LANGBEHN-POND FAMILY

26.    Janice Langbehn and Lisa Marie Pond were life partners who, up until the time of Lisa Marie's premature death, had been involved in a monogamous romantic and emotionally

7

and financially dependent relationship since shortly after meeting each other in 1987.   The women participated in a commitment ceremony and Holy Union in Tacoma Community Church in 1991, which recognized and blessed their union in the presence of family and friends, and they considered each other "soul-mates" and one another's closest family member.

27.   Janice and Lisa Marie were registered foster parents since 1992, and together fostered 22 children over the years.   They became the adoptive parents to four children, each with "special needs" who were considered hard to place.

28.   Lisa Marie died inside Jackson Memorial Hospital at age 39.   She had been a stay-at-home mom to her and Janice's four adopted children, who ranged in ages from 9 to 17 years old at the time of Lisa Marie's passing.   Lisa Marie had been a vibrant part of the Olympia, Washington community, served as a Girl Scout Troup leader and Parent Teacher Student Association member, taught first communion classes at her church and volunteered at her children's schools.

29.   Lisa Marie and Janice thoughtfully and consciously built their lives, and made their home, together; held a joint checking account; owned properties jointly; granted each other power of attorney in the event of incapacity; and otherwise were interdependent and functioned as a family unit in every possible way.

30.   Janice and Lisa Marie jointly adopted their first child, Michael, in 1996.

31.   In March of 1997, the State of Washington asked Janice and Lisa Marie to consider taking in another hard to place child, David, who was 18 months old at the time.   Three days after meeting him, the couple moved the child into their home.   David's joint adoption by Janice and Lisa Marie was finalized in May of 1998.

32.     David's half-sister, Katie, was 27 days old when she joined the Langbehn-Pond family.  Katie's joint adoption by Janice and Lisa Marie was finalized November 2, 1998.

33.     The Langbehn-Pond family became complete with the adoption of Danielle, Michael's sister.   Danielle transitioned into Janice and Lisa Marie's care in June of 1998. Danielle's joint adoption by Janice and Lisa Marie was finalized April 19, 1999.

## E.     THE MISTREATMENT OF THE LANGBEHN-POND FAMILY

34.     On or about February 17, 2007, the Langbehn-Pond family arrived in Miami to depart on a cruise the next day.

35.     On or about February 18, 2007, Lisa Marie collapsed aboard a Norwegian Cruise Line ship while it was docked in the Port of Miami. Lisa Marie arrived by ambulance at Ryder Trauma Center ("Ryder"), an emergency facility owned and operated by Defendant Jackson Memorial, at approximately 3:30 P.M. Janice, Danielle, Katie, and David arrived at Ryder at approximately the same time as Lisa Marie.

37.     At Ryder, Janice immediately explained to the admitting clerk, or Jackson Memorial employee of similar title, (hereinafter referenced as "Jane Doe") that she was Lisa Marie's life partner and offered to provide relevant medical history and information; established herself as the appropriate family member to discuss and receive information regarding Lisa Marie's condition; and emphasized her need to be with Lisa Marie as soon as possible.  Janice also explained that the Langbehn-Pond children were her and Lisa Marie's legally adopted children.

38.     At all times material, Jane Doe appeared to be the relevant Jackson Memorial gatekeeper who controlled family members' access to emergency personnel attending to patients at Ryder.

Baker & McKenzie LLP, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131 – (305) 789-8900

39.     Jane Doe denied Janice's offers to provide medical information regarding Lisa Marie. Further, Jane Doe refused to provide Janice information about Lisa Marie's condition and, over the next eight hours, steadfastly refused to facilitate access for Janice and the Langbehn-Pond children to see or be with Lisa Marie while Lisa Marie was a patient at Ryder.

40.     Subsequent to Janice's conversation with Jane Doe, where Janice informed Jane Doe of Janice's relationship to Lisa Marie, Jackson Memorial social worker Defendant Frederick approached Janice and informed her that she should not expect to be provided *any* information on the condition of, or have the ability to be with, Lisa Marie as they were in an "anti-gay city and state." Frederick further informed Janice that she would not be able to get before a court in order to secure the legal papers necessary for her to get information or access to Lisa Marie for several days since it was a holiday weekend.

41.     As Defendant Frederick turned to walk away, Janice demanded to be provided with a facsimile number in order to have Lisa Marie's duly executed Power of Attorney sent to the hospital, a copy of which is attached hereto as Exhibit A.

42.     On or about 4:15 P.M., and shortly after Janice's conversation with Defendant Frederick, Lisa Marie's Power of Attorney was received by the appropriate Jackson Memorial facsimile machine in the Ryder facility.  On information and belief, the facsimiled copy of the Power of Attorney was thereafter placed in Lisa Marie's medical file. Notwithstanding the fact that Jackson Memorial received the Power of Attorney authorizing Janice to act as Lisa Marie's guardian of her person and to make medical decisions for Lisa Marie in the event of her incapacity, Defendants did not acknowledge receipt or provide written notification that Janice's authority under the instrument had commenced as required by law.

Baker & McKenzie LLP, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131 – (305) 789-8900

43.     On information and belief, Defendants Zauner and Cruz, as the attending physicians responsible for the care and treatment of Lisa Marie, and Defendant Frederick, as the assigned social worker for Lisa Marie and her family, knew or should have known of the receipt of the Power of Attorney, the advanced directives of Lisa Marie and Janice's role as guardian of Lisa Marie's person and the person to make decisions given Lisa Marie's incapacity.

44.     According to Lisa Marie's medical records, the following events occurred at or shortly after the Power of Attorney document arrived at the hospital:

a.      medical disposition was made at 4:15 P.M. confirming that Lisa Marie had experienced an aneurysm;

b.      medicine was administered to Lisa Marie at 4:30 P.M.;

c.      a surgical procedure was performed involving the placement of a ventria at 5:20 P.M.; and

d.      Lisa Marie was transferred from Ryder to the Neurosurgery Intensive Care Unit of Jackson Memorial at 10:30 P.M.

45.     Despite Janice's notification to several Jackson Memorial employees between 3:30 P.M. and 4:15 P.M that Janice held a durable power of attorney for Lisa Marie and that Janice was Lisa Marie's life partner, and notwithstanding the fact that Jackson Memorial received confirmation of the fact that Janice held that durable power of attorney at approximately 4:15 P.M, no hospital personnel spoke with Janice, sought information from Janice regarding Lisa Marie's medical condition and current medications, nor advised Janice of Lisa Marie's medical condition, prognosis or course of treatment until approximately 5:20 P.M.

46.     At approximately 5:20 P.M., one of the attending physicians spoke with Janice for approximately one minute and told her that Lisa Marie needed a "brain monitor." Janice consented to the procedure.

11

47.     At approximately 6:10 P.M., two doctors approached Janice to discuss Lisa Marie's condition and surgical options.  Janice insisted on calling Lisa Marie's parents, who were thereafter placed on speakerphone for the duration of the conversation, and to whom the doctors directed the remainder of the conversation. Sometime during this conversation, the doctors learned that Lisa Marie's condition had deteriorated and advised that no medical intervention could reverse Lisa Marie's condition and that she would likely never regain consciousness. Janice then advised the doctors that Lisa Marie was an organ donor.

48.     At approximately 6:20 P.M., Janice asked the doctors if she and the Langbehn-Pond children could see their family member, and emphasized the need to do so.  Janice was told that they would be able to do so as soon as Lisa Marie was "cleaned up."

49.     Notwithstanding the fact that a doctor admitted that no medical reason existed to prevent Janice and the Langbehn-Pond children from being with their dying family member, none of Defendants and no one from Ryder allowed, invited or escorted Janice or the Langbehn-Pond children into the restricted area where Lisa Marie lay dying.

50.     At approximately 6:50 P.M., after requesting a Catholic priest to perform the ceremony of last rites for Lisa Marie from a clergy member who approached Janice in the waiting area, a priest escorted Janice into the trauma area, where Lisa Marie lay alone in a trauma bay, and the priest performed last rites. Janice was immediately escorted back to the waiting area by the priest once the ceremony had concluded at approximately 6:55 P.M.

51.     Thereafter, as during the three previous hours, Janice, Danielle, Katie, and David waited and watched as other families (including those with minor children) who entered Ryder were met with compassion; were provided immediate information from Jane Doe and were escorted into and out of Ryder's restricted area to see their family member.

Baker & McKenzie LLP, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131 – (305) 789-8900

52.     Undaunted, Janice continued to request permission from Jane Doe to see Lisa Marie and to receive information about her condition approximately every 20 minutes. As before, Jane Doe denied such requests and provided no further information or updates on Lisa Marie's condition, and failed to communicate that Lisa Marie had been transferred to another hospital unit within Jackson Memorial.

53.     At approximately 11:30 P.M., Lisa Marie's sister and brother-in-law arrived from Jacksonville, Florida; were immediately recognized as family by Jackson Memorial personnel after Janice introduced them as such; were informed that Lisa Marie had been transferred to another unit in the hospital; and were then promptly provided Lisa Marie's hospital room number.

54.     Due to Defendant's negligent, and/or willful, wanton, and intentional actions and omissions during the nearly eight hours in which Lisa Marie was at Ryder, the surviving Langbehn-Pond family has suffered physical injury including but not limited to the exacerbation of Janice's multiple sclerosis symptoms, severe psychological distress, trauma, nausea, insomnia and depression.

## COUNT I
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### (Janice, Danielle, David and Katie
### vs.
### Jackson Memorial, Frederick, Zauner, and Cruz)

55.     Janice Danielle, David and Katie hereby repeat and reallege the allegations of paragraphs 1 through 54 of this Complaint as if fully set forth herein.

56.     Jackson Memorial is vicariously liable, under the doctrine of *respondeat superior*, for the tortious acts committed by the acts or omissions of its agents or employees, including,

Baker & McKenzie LLP, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131 – (305) 789-8900

without limitation those of Frederick, Zauner, and Cruz (collectively "defendant agents and employees").

57.     Janice had a close personal relationship with Lisa Marie.  Specifically, Lisa Marie was Janice's life partner and was the joint adoptive parent of Danielle, Katie, and David.

58.     Janice held Lisa Marie's Power of Attorney, authorizing Janice to make and refuse medical decisions for Lisa Marie in the event of her incapacity, and to communicate Lisa Marie's wishes about end-of-life care and related health care decisions.

59.     Danielle had a close personal relationship with Lisa Marie.  Specifically, Danielle was Lisa Marie's adoptive daughter.

60.     Katie had a close personal relationship with Lisa Marie.  Specifically, Katie was Lisa Marie's adoptive daughter.

61.     David had a close personal relationship with Lisa Marie.  Specifically, David was Lisa Marie's adoptive son.

62.     Jackson Memorial and its defendant agents and employees breached the duty owed to Janice and the Langbehn-Pond children by, without limitation:

> a.     negligently barring Janice, Danielle, David and Katie from visiting, seeing, being with, comforting, or being comforted by, Lisa Marie while she lay dying just steps away where no medical necessity or justification existed preventing such conduct;
>
> b.     failing to afford Janice, Danielle, David and Katie the basic dignity and respect owing to any human being, by denying them the ability to be with their family member for several hours after knowing that Lisa Marie was dying just yards away from them, despite Janice's repeated requests and pleading;
>
> c.     failing to timely acknowledge the Power of Attorney, or to otherwise consult with or update Janice regarding Lisa Marie's treatment and condition in a timely fashion;

d.      failing to provide written notification to Janice that her authority under Power of Attorney had commenced as required under the law;

e.      violating professional standards and internal policies requiring reasonable patient access, and communication with family members;

f.      violating professional standards and internal policies requiring providing an environment that preserves the dignity of, and treats with compassion, its clients, patients, patients' friends and families;

g.      violating professional standards and internal policies requiring nurse-patient relationships that recognize the individual's values and, among other things, the individual's sexual orientation;

h.      violating professional standards and internal policies requiring a patient representative to provide, or serve as, a liaison between families and visitors, on the one hand, and hospital staff, on the other, for the resolution of concerns; and to assist with needed information, patient health care issues, and complaints; and

i.      failing to provide appropriate social services, including but not limited to failing to provide emotional support, crisis and bereavement counseling.

63.     Jackson Memorial and its defendant agents and employees failed to use the degree of care that is expected of a reasonably competent hospital and hospital staff in the same or similar circumstances.

64.     A special relationship and/or special professional duty exists between the trauma unit treating physicians and/or the social worker assigned to the trauma unit and the families of its incompetent and dying patients; in particular, a special relationship and/or special professional duty existed between Defendants and Janice and the Langbehn-Pond children as the family of Lisa Marie.

65.     Jackson Memorial's and it defendant agents' or employees' actions and omissions were negligent and/or so reckless or wanting in care as to constitute a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.

Baker & McKenzie LLP, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131 – (305) 789-8900

66.     It was foreseeable that grave emotional injuries would flow from the breach of duties described in paragraph 62 above, including but not limited to refusing to provide information to loved ones on the condition of, and to allow access to, a patient in his or her last hours where no medical or other legitimate justification exists for doing so.

67.     As a direct and proximate result of the actions and omissions of Jackson Memorial, Frederick, Zauner, Cruz, and other agents or employees of Jackson Memorial, and/or Jackson Memorial's negligent failure to train its agents or employees, Janice, Danielle, David and Katie suffered physical injury, psychological trauma and severe emotional distress within a short time of the actions and omissions of Defendants as described herein.

**WHEREFORE**, Janice, individually and as the mother and next friend of Danielle, Katie, and David, demands judgment against Jackson Memorial, Frederick, Zauner, and Cruz for damages, and for any further relief this Court deems just and proper.

**COUNT II**
**<u>NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS</u>**

**(The Estate of Lisa Marie**
**vs.**
**Jackson Memorial, Frederick, Zauner, and Cruz)**

68.     The Estate of Lisa Marie, through Janice, hereby repeats and realleges the allegations of paragraphs 1 through 54 of this Complaint as if fully set forth herein.

69.     Jackson Memorial is vicariously liable, under the doctrine of *respondeat superior*, for the tortious acts and omissions committed by its agents or employees, including, without limitation those of Frederick, Zauer and Cruz (collectively "defendant agents or employees").

70.     Lisa Marie gave Janice Power of Attorney, authorizing Janice to make medical decisions for her in the event of her incapacity, which authority necessarily extended to decisions regarding visitation consistent with the hospital's policies.

16

71.     Jackson Memorial and its defendant agents and employees owed a duty to Lisa Marie to respect her decisions and wishes as expressed by Lisa Marie's duly appointed Power of Attorney to allow the Langbehn-Pond Family to be with her in her dying hours.

72.     Jackson Memorial and its defendant agents and employees failed to use the degree of care that is expected of a reasonably competent hospital and hospital staff  in the same or similar circumstances.

73.     Jackson Memorial and its defendant agents and employees breached the duty owed to Lisa Marie by, without limitation:

a.   negligently barring the Langbehn-Pond Family from visiting, seeing, being with, and comforting, Lisa Marie in her dying hours;

b.   failing to recognize or treat Lisa Marie's life partner and the Langbehn-Pond children as Lisa Marie's family members;

c.   failing to afford Lisa Marie the basic dignity and respect owing to any human being who is dying by denying her the ability to have her immediate family members by her side where the family is just yards away and despite knowing Lisa Marie's wishes as expressed through her representative to allow one or more family members to be with her in those critical and irreplaceable moments at the end of life;

d.   failing to timely acknowledge the Power of Attorney, or to otherwise consult with Janice regarding Lisa Marie's treatment in a timely fashion;

e.   violating professional standards and internal policies requiring reasonable patient access, and communication with family members;

f.   violating professional standards and internal policies requiring an environment that preserves the dignity of, and treats with compassion, its clients, patients, patients' friends and families; and by

g.   violating professional standards and internal policies requiring nurse-patient relationships that recognize the individual's values and, among other things, the individual's  sexual orientation.

Baker & McKenzie LLP, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131 – (305) 789-8900

74.    Jackson Memorial and defendant agents and employees failed to use the degree of care that is expected of a reasonably competent hospital and hospital staff in the same or similar circumstances.

75.    A special relationship and/or special professional duty existed between Jackson Memorial, by itself and/or through its defendant agents and employees; in particular, a special relationship and/or special professional duty existed between Defendants and Lisa Marie.

76.    It was foreseeable that grave emotional injuries would flow from the breach of duties described in paragraph 73 above, including but not limited to denying loved ones the ability to be with a patient in his or her final hours where no medical or other legitimate justification exists for doing so.

77.    Lisa Marie was touched, contacted by and otherwise impacted in the course of treatment while a patient in Jackson Memorial.

78.    As a direct and proximate result of the actions and omissions of Frederick, Zauner and Cruz, and Jackson Memorial's negligent failure to train its employees, Lisa Marie suffered psychological trauma and severe emotional distress.

79.    Lisa Marie sustained physical injury as a direct and proximate result of the psychological trauma occasioned by Jackson Memorial's and its defendant agents' and employees' within a short time of the actions and omissions of Defendants as described herein.

**WHEREFORE,** the Estate of Lisa Marie, through Janice, demands judgment against Jackson Memorial and individual Defendants, Frederick, Zauner and/or Cruz for damages, and for any further relief this Court deems just and proper.

Baker & McKenzie LLP, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131 – (305) 789-8900

## COUNT III
## NEGLIGENCE *PER SE*

**(Janice, the Estate of Lisa Marie, Danielle, Katie, and David**
**vs.**
**Jackson Memorial, Frederick, Zauner and Cruz)**

80.     Janice, the Estate of Lisa Marie (through Janice), Danielle, Katie and David hereby repeat and reallege the allegations of paragraphs 1 through 79 of this Complaint as if fully set forth herein.

81.     In accordance with applicable laws, professional standards of the industry, and the Joint Commission's standards, and its own Internal Policies, Jackson Memorial and its agents and employees were required to provide Janice, Lisa Marie, Danielle, Katie and David with reasonable patient access, and communication with family members, as more fully described in paragraphs 23 and 25 of this Complaint.

82.     In accordance with applicable laws, professional standards of the industry, the Joint Commission's standards, Jackson Memorial's own Internal Policies and Florida statutes, Jackson Memorial and its defendant agents and employees were required to honor Lisa Marie's Power of Attorney.

83.     Jackson Memorial and its defendant agents and employees failed to adhere to applicable laws, professional standards of the industry, and the Joint Commission's standards by, without limitation:

        a.     denying Janice, Lisa Marie, Danielle, Katie and David reasonable patient access, and communication with family members without medical justification;

        b.     failing to recognize Janice as a life partner and a family member of Lisa Marie;

        c.     failing to recognize Danielle as a family member of Lisa Marie;

19

e.   failing to recognize Katie as a family member of Lisa Marie;

f.   failing to recognize David as a family member of Lisa Marie;

g.   failing to timely honor Lisa Marie's Power of Attorney, and to respect her wishes as expressed through her Power of Attorney;

h.   failing to provide written notification to Janice that her authority under Power of Attorney had commenced as required under the law;

i.   failing to provide emotional support and support services to Janice and the Langbehn-Pond children despite knowing that their family member patient was dying;

j.   violating professional standards and internal policies requiring reasonable patient access, and communication with family members; and by

k.   violating professional standards and internal policies requiring an environment that preserves the dignity of, and treats with compassion, its clients, patients, patients' friends and families.

84.   Jackson Memorial's and it agents and employees' conduct in failing to adhere to applicable laws, professional standards of the industry, and the Joint Commission's standards, fell below the conduct that is expected of a reasonably competent hospital and hospital staff in the same or similar circumstances.

85.   A special relationship and/or special professional duty existed between Jackson Memorial, by itself and/or through defendant agents and employees, and its incompetent and dying patients; in particular, a special relationship and/or special professional duty existed between Defendants and Lisa Marie.

86.   A special relationship and/or special professional duty existed between Jackson Memorial, by itself and/or through its defendant agents and employees, and the families of its incompetent and dying patients; in particular, a special relationship and/or special professional duty existed between Defendants and Janice and the Langbehn-Pond children as the family of Lisa Marie.

87.     It was foreseeable that grave emotional injuries would flow from the breach of duties described in paragraph 83 above, including but not limited to refusing to provide information to loved ones on the condition of, and to allow access to, a patient in his or her last hours where no medical or other legitimate justification exists for doing so.

88.     As a direct and proximate result of Jackson Memorial's and its defendant agents and employees' actions and omissions, and/or Jackson Memorial's failure to train its agents and employees, Janice, Lisa Marie, Danielle, Katie and David sustained injuries within a short time of the actions and omissions of Defendants as described herein which caused them damages.

**WHEREFORE**, Janice, the Estate of Lisa Marie (through Janice), Danielle, Katie and David demand judgment against Jackson Memorial and the individual Defendants Frederick, Zauner and Cruz for damages, and for any further relief this Court deems just and proper.

### COUNT IV
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**(Janice, Danielle, David, and Katie**
**vs.**
**Frederick, Zauner, and Cruz)**

89.     Janice hereby repeats and realleges the allegations of paragraphs 1 through 54 of this Complaint as if fully set forth herein.

90.     Janice had a close personal relationship with Lisa Marie.  Specifically, Lisa Marie was Janice's life partner and was the joint adoptive parent of Danielle, Katie, and David.

91.     Danielle had a close personal relationship with Lisa Marie.  Specifically, Danielle was Lisa Marie's adoptive daughter.

92.     Katie had a close personal relationship with Lisa Marie.  Specifically, Katie was Lisa Marie's adoptive daughter.

93.     David had a close personal relationship with Lisa Marie.  Specifically, David was Lisa Marie's adoptive son.

94.     Janice held Lisa Marie's Power of Attorney, authorizing Janice to make medical decisions for Lisa Marie in the event of her incapacity.

95.     Frederick, Zauner and Cruz acted intentionally, willfully, wantonly, or recklessly, by, without limitation:

   a.     barring Janice, Danielle, David and Katie from visiting, seeing, being with, comforting, or being comforted by, Lisa Marie;

   b.     refusing to recognize or treat Janice, Danielle, David and Katie as Lisa Marie's family in her last hours where no medical necessity existed preventing such conduct;

   c.     denying Janice the basic dignity and respect owing to any human being, by not allowing this family to be together for brief periods in the last hours of one family member's life, despite repeated requests and pleading; and by

   d.     refusing to timely acknowledge the Power of Attorney, or to otherwise consult with Janice regarding Lisa Marie's medical history, wishes, and treatment in a timely and ongoing fashion.

96.     The conduct of Frederick, Zauner and Cruz towards Janice, Danielle, David and Katie was extreme and outrageous and went beyond the bounds of decency.

97.     As a direct and proximate result of the conduct of Frederick, Zauner and Cruz, Janice, Danielle, David and Katie suffered severe psychological trauma and emotional distress.

**WHEREFORE**, Janice, Danielle, David and Katie demand judgment against Frederick, Zauner and Cruz for compensatory and punitive damages, and for any further relief this Court deems just and proper.

Baker & McKenzie LLP, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131 – (305) 789-8900

## DEMAND FOR JURY TRIAL

Plaintiffs Janice, the Estate of Lisa Marie (through Janice), Danielle, Katie and David hereby demand a trial by jury of all issues so triable in this action.

Dated this 24th day of _June_, 2008.

Respectfully submitted,

By: _____
Donald J. Hayden
Florida Bar No. 097136
E-mail: donald.hayden@bakernet.com
Jorge D. Guttman
Florida Bar. No. 015319
E-mail: jorge.guttman@bakernet.com
Joseph J. Mamounas
Florida Bar No. 041517
E-mail: joseph.mamounas@bakernet.com

BAKER & McKENZIE LLP
1111 Brickell Avenue, Suite 1700
Miami, Florida 33131
Telephone: 305-789-8900
Facsimile:  305-789-8953

Elizabeth Littrell
Georgia Bar No. 454949
E-mail: blittrell@lambdalegal.org
(Application for admission *pro hac vice* pending)
Gregory Nevins
Georgia Bar No.  539529
E-mail: gnevins@lambdalegal.org
(Application for admission *pro hac vice* pending)

Lambda Legal Defense and Education Fund
Southern Regional Office
730 Peachtree Street N.E., Suite 1070
Atlanta, GA 30308-1210
Telephone - (404) 897-1880
Facsimile  - (404) 897-1994

Attorneys for Plaintiffs

MIADMS/337830.1

23

Baker & McKenzie LLP, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131 – (305) 789-8900

02/18/2007  01:17   3604382925                    LANGBEHN POND                        PAGE  01

↳ pacifier find
or
417 Eastern find

## HEALTH CARE DIRECTIVE

Directive made on *February 6*, 2001.

I, LISA MARIE POND, the undersigned Declarer, having the capacity to make health care decisions, willfully, and voluntarily make known my desire that my dying shall not be artificially prolonged under the circumstances set forth below, and do hereby declare that:

(a)    If at any time I should be diagnosed in writing to be in a terminal condition by the attending physician, or in a permanent unconscious condition by two physicians, and where the application of life-sustaining treatment would serve only to artificially prolong the process of my dying, I direct that such treatment be withheld or withdrawn, and that I be permitted to die naturally. I understand by using this form that a terminal condition means an incurable and irreversible condition caused by injury, disease, or illness, that would within reasonable medical judgment cause death within a reasonable period of time in accordance with accepted medical standards, and where the application of life-sustaining treatment would serve only to prolong the process of dying. I further understand in using this form that a permanent unconscious condition means an incurable and irreversible condition in which I am medically assessed within reasonable medical judgment as having no reasonable probability of recovery from an irreversible coma or a persistent vegetative state.

(b)    In the absence of my ability to give directions regarding the use of such life-sustaining treatment, it is my intention that this directive shall be honored by my family and physician(s) as the final expression of my legal right to refuse medical or surgical treatment, and I accept the consequences of such refusal. If another person is appointed to make these decisions for me, whether through a durable power of attorney or otherwise, I request that the person be guided by this directive and any other clear expressions of my desires.

(c)    If I am diagnosed to be in a terminal condition or in a permanent unconscious condition (check one):

_____  I **do** want to have artificially provided nutrition and hydration.

*JMP*  I **do not** want to have artificially provided nutrition and hydration.

(d)    If I have been diagnosed as pregnant and that diagnosis is known to my physician, this directive shall have no force or effect during the course of my pregnancy.

(e)    I understand the full import of this directive and I am emotionally and mentally capable to make the health care decisions contained in this directive.

(f)    I understand that before I sign this directive, I can add to or delete from or otherwise change the wording of this directive and that I may add to or delete from this directive at any time and that any changes shall be consistent with Washington state law or federal constitutional law to be legally valid.

3378233    NOS  10/08/67
PONDS, LISA MARIE        WF
4920 50TH AVE S.E.      98503
7069  VF4     N   04/17/07 YF4



COPY

EXHIBIT
A

(g)    It is my wish that every part of this directive be fully implemented.  If for any reason any part is held invalid it is my wish that the remainder of my directive be implemented.

This directive is made pursuant to the provisions of Laws of 1979, Ch. 112 (RCW 70.122.030) and as amended in 1992, RCW 70.122.010.

_Lisa Marie Pond_ , a resident of _Lacey_
DECLARER                              CITY

_Thurston_    _WA_
COUNTY    STATE

The declarer has been personally known to each of the undersigned witnesses and we believe the declarer to be capable of making health care decisions.

_Margaret Hm_ , residing at _Olympia_
WITNESS                              CITY

_Thurston_    _WA_
COUNTY    STATE

_Catherine Hitchman_ , residing at _Olympia_
WITNESS                              CITY

_Thurston_    _WA_
COUNTY    STATE

3378233
PONDS, LISA MARIE      NOS   10/08/67
4920 59TH AVE S.E.                    WF
7049   VE4          N      98503
                        04/17/07   VE4

COPY

153

# DURABLE POWER OF ATTORNEY

The undersigned, LISA MARIE POND, as principal, domiciled in the State of Washington, hereby revokes all powers of attorney previously granted and hereby designates JANICE LANGBEHN to be the attorney-in-fact, but if the designated attorney-in-fact shall be or become unable or unwilling to act, then NETTIE POND shall be the attorney-in-fact for the principal as follows:

Duration. This power of attorney becomes effective upon the execution of this document and shall remain in effect to the extent permitted by Chapter 11.94 of the Revised Code of Washington or until revoked, notwithstanding any uncertainty as to whether the principal is dead or alive.

Disability of Principal. This power of attorney shall not be affected by the disability of the principal.

Appointment of Guardian.     To the extent permitted by Chapter 11.94 of the Revised Code of Washington, the principal hereby nominates the attorney-in-fact to be guardian of the person and estate for the principal, but if the designated guardian shall be or become unable or unwilling to act as guardian of the person and estate of a principal, then the alternate attorney-in-fact designated above is hereby nominated to be such guardian.

Power. The attorney-in-fact shall have the power to do all things with respect to the assets and liabilities of the principal, real or personal, wherever located, as the principal could do if present and competent, with full power of substitution and revocation, including the power:

Provide for Principal. To provide for the support, maintenance, and health of the principal.

Enter Safe Deposit Box. To enter any safe deposit box in the name of the principal.

Make Withdrawals and Deposits.     To make withdrawals from or deposits to any account in any financial institution, any money market fund, any securities account, or any other cash account in the name of principal.

Optional Transfer of Assets. To transfer all or part of the assets from the principal to the attorney-in-fact or any heirs.

Exercise Trust Powers. To exercise all power, authority and discretion with regard to the property, rights, and interests of the principal, which a trustee may exercise under the laws of the State of Washington on the date of this instrument as if all such laws are effective as of this date.

Transfer Property and Execute Documents. To lease, let, bargain, sell, convey, mortgage and hypothecate lands, tenements and hereditaments and to sign, seal, execute, deliver, and acknowledge such deeds, leases, assignments, covenants agreements, and such other instruments in writing of

Witnesses                3378233    N05   10/58987              Principal
                         PONDS, LISA MARIE        WF
                         4920 50TH AVE S.E.   98503
                         7049   VE4    N   04/17/07  VE4

Page 1

COPY

154

whatever kind and nature as may be necessary or proper upon such terms and conditions as a trustee sees fit.

    Health Care. To provide informed consent for health care decisions on the principal's behalf subject to the same limitations as those that apply to a guardian under RCW 11.92.043(5).

    Ratification. The principal hereby ratifies and confirms all that the attorney-in-fact lawfully shall do or cause to be done by virtue of the power granted herein.

    Reliance. All persons dealing with a principal's acting attorney-in-fact hereunder are entitled to rely on the apparent authority of the attorney-in-fact, unless they have actual knowledge of invalidity in the execution of or the revocation of this power, or of the termination of this power by death of the principal.

    Photocopies. Photocopies of this document are as valid as the original.

    Dated: _February 6_ 2001.

                                                        _Lisa Marie Pond_
                                                          PRINCIPAL

STATE OF WASHINGTON )
                      ) ss.
County of Thurston      )

    On this day LISA MARIE POND personally before me appeared and is to me known to be the individual described in and who executed the within and foregoing instrument; and she acknowledged to me that she signed the same as her free and voluntary act and deed, for the uses and purposes therein mentioned.

    GIVEN under my hand and official seal on _2-6-_, 2001.

                                         _Marianne Derr_
                                      Printed Name: _Marianne Derr_
                                      Notary Public in and for the State of
                                      Washington, residing at _Olympia, WA_
                                      Commission Expires: _10-08-07_

3378233      N05   10/08/67
PONDS, LISA MARIE
4920  50TH AVE S.E.          **Page 2**
7049   VE4      N    98503
                04/17/07 VE4
Witnesses

COPY

155

AFFIDAVIT OF WITNESSES TO THE DURABLE POWER OF ATTORNEY OF

LISA MARIE POND

STATE OF WASHINGTON )
                         ) ss.
County of Thurston      )

Each of the undersigned, being duly sworn on oath, states that on _February 6_, 2001.

Witnesses.   I am over 18 years of age and competent to be a witness to the durable power of attorney the principal named above (the principal), who is personally known to me.

Principal's Action  The principal in my presence and in the presence of the other witness whose signature appears with mine below signed the foregoing instrument and requested that I and the other witness act as witnesses to his durable power of attorney and make this affidavit.

Principal's Competency.  I believe that at the time of the principal's previously mentioned signing and request the principal was of sound mind and was not acting under any duress, menace, fraud, undue influence, or misrepresentation.

Witnesses' Action.  The other witness and I in the presence of the principal and of each other now affix our signatures as witnesses to the durable power of attorney of the principal and make this affidavit.

_Catherine Hickman_ Residing at _Olympia WA_
   WITNESS

_Margaret Ethin_ Residing at _Olympia, WA_
   WITNESS

SUBSCRIBED AND SWORN to before me on _2-6-_, 2001.

Printed Name: _Marianne Derr_
Notary Public in and for the State of
Washington, residing at: _Olympia WA_
Commission Expires: _10-08-03_

3378233    NO5  10/08/67
PONDS, LISA MARIE
4920 50TH AVE S.E.          WF
7049   YE4    N      98503
          04/17/07 YE4

COPY   Principal

156

Case 1:08-cv-21813-AJ Document 1 Entered on FLSD Docket 06/25/2008 Page 29 of 29

**CIVIL COVER SHEET**

JS 44 (Rev. 11/05)

ELECTRONIC

**June 25, 2008**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

**I. (a) PLAINTIFFS**

Janice Langbehn, et al.,

**DEFENDANTS**

The Public Health Trust of Miami-Dade C[...]
Memorial Hospital, et al.,

**(b)** County of Residence of First Listed Plaintiff   Thurston County, WA
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Donald J. Hayden, Esq., Baker & McKenzie, LLP.
1111 Brickell Avenue, Suite 1700
Miami, Florida 33131

Attorneys (If Known)

**(d)** Check County Where Action Arose:  ☑ MIAMI- DADE  ☐ MONROE  ☐ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE   HIGHLANDS

| **II. BASIS OF JURISDICTION** (Place an "X" in One Box Only) | **III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff |
|---|---|

(For Diversity Cases Only) and One Box for Defendant)

| | | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|---|
| ☐ 1  U.S. Government Plaintiff | ☐ 3  Federal Question (U.S. Government Not a Party) | Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☑ 4 |
| ☐ 2  U.S. Government Defendant | ☑ 4  Diversity (Indicate Citizenship of Parties in Item III) | Citizen of Another State | ☑ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| | | Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

Dade 08CV21813 - Jordan/McAliley

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| **CONTRACT** | **TORTS** | | **FORFEITURE/PENALTY** | **BANKRUPTCY** | **OTHER STATUTES** |
|---|---|---|---|---|---|
| | PERSONAL INJURY | PERSONAL INJURY | | | |
| ☐ 110 Insurance | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 315 Airplane Product | Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | Liability | ☐ 365 Personal Injury - | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | Product Liability | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | Slander | ☐ 368 Asbestos Personal | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | ☐ 330 Federal Employers' | Injury Product | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | Liability | Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | ☐ 340 Marine | PERSONAL PROPERTY | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 345 Marine Product | ☐ 370 Other Fraud | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | Liability | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | Product Liability | ☐ 385 Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | ☐ 360 Other Personal | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | Injury | | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

**V. ORIGIN** (Place an "X" in One Box Only)

Appeal to District Judge from Magistrate Judgment

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Re-filed- (see VI below)   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7

**VI. RELATED/RE-FILED CASE(S).** (See instructions second page):

a) Re-filed Case ☐ YES ☐ NO   b) Related Cases ☐ YES ☐ NO

JUDGE

DOCKET NUMBER

**VII. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (**Do not cite jurisdictional statutes unless diversity**):

28 U.S.C. Section 1332 - Intentional and Negligent Torts

LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

**VIII. REQUESTED IN COMPLAINT:**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE  6/24/08

FOR OFFICE USE ONLY

AMOUNT  350.00   RECEIPT #  98274

06/25/08